The court may have pleased the court. My name is Robert Wood. I appear on behalf of Alberto Alfaro. Mr. Alfaro signed an agreement upon his release from prison in 2018 in which he agreed to supervise release, one of which was that he would submit to a search of his person, property, vehicle, place of residence, or any other property under his control based upon reasonable suspicion and permit confiscation of any evidence or contraband discovered. During the course of his supervised release, Mr. Alfaro, who also happened to be a wheelchair-bound individual, was doing quite well on his probation up to about, in or about, the months preceding November of 2020 when his probation officer, Mr. Curran, received some information from another federal officer, a tobacco and firearms officer named Ben Elstington, to the effect that he had received information from an anonymous individual that Mr. Elstington Excuse me. Can I stop you right there, Mr. Wood? You say an anonymous individual. The name was not disclosed to the probation officer. That's correct. But isn't there a finding by the magistrate judge that this was not an anonymous tip to the ATF agent, that this was from someone whose identity he knew? He, the ATF agent. I believe the record discloses that even the ATF agent didn't know his name, but I'm not sure about that. But in any event, the ATF agent, whether he knew his name or not, did not vouch for his reliability. Yes, I understand that, and this is not a case where we have evidence of a reliable informant that would generate probable cause. But I'm trying to figure out why on earth the courts, the district court here, did not just say there's a reasonable suspicion. You've got someone who, it is represented to the probation officer by a federal agent that this was a tip from one of his sources, not from an anonymous weird phone call that came in from who knows who, and furthermore, that was corroborated by something that the typical anonymous tipster doesn't have, which is photographs of what the probation officer recognized to be Mr. Alfaro's apartment with a gun in it. Now, that may not be probable cause to justify a search warrant, but I'm having trouble figuring out with the reasonable suspicion standard, which is a relatively low bar, isn't it reasonable for the probation officer to think that there's a problem here? No, and I'll tell you why. The photographs were supplied by the same person who's supplying the tip, and we still don't know his name, and we don't know whether he's reliable. We don't know that he's reliable, but that's different, that's a probable cause standard. Why isn't it a reasonable suspicion? After all, the problem with an anonymous tip is anybody can call up and say there's a guy in a gray suit, he's going to come out of the federal courthouse in a little while and he's carrying a gun. Anybody can say that, and we don't know who it is, and we have no idea what their motives are or anything else. But when someone is known to an officer and is taking responsibility for this tip, that first of all, again, whether it's reliable or not, whether it's probable cause or not, that sort of elevates the situation. And when that person provides photographic evidence of what the person is saying is true, I'm not saying somebody gets convicted on this kind of hearsay, I'm not saying that a warrant to search an ordinary citizen's apartment is justified. Why isn't that a reasonable basis to think that Mr. Alfaro is violating the conditions of supervised release? Well, the photographs depicted to show a shotgun and a pistol, the probation officer testified that the pistol that was eventually found was not the same pistol that was in the photograph. Yeah, so what? And there was no rifle found. The probation officer did recognize the bathroom, though, right? Yeah, it was the bathroom, but remember, the defendant, Mr. Alfaro, didn't move in there until 2018. So we still don't know when the photographs were taken, and the pill bottle didn't have a date on it. So we don't know when these photographs were taken. Did the pill bottle have your client's name on it? Yeah, it was a prescription bottle, it was not a contraband bottle, it was a prescription bottle. It had my client's name on it, but it didn't have a date on it. I guess I'm just having the same problem as my colleague, that you do need some corroboration, assuming for the moment that it's an anonymous tip, but I understood as well that the ATF agent knew who he was dealing with. But even assuming it was an anonymous tip, you just need some level, you need significant corroboration, but you don't usually get a photograph that the probation officer can say, this is a photograph of the man's home. Well, if the court's going to take the position that that's reasonable suspicion and it satisfies the agreement, then that would be fine, but that's not what the ruling was in the court below. What the court below said, we don't even need to follow this agreement. If this court ultimately says, we find that there was reasonable suspicion based upon that, we can live with that, but that's not what the court below ruled. What the court below ruled was that you don't even have to follow this agreement. Because of the special needs doctrine. We can affirm on the basis of any legal theory that's evident in the record. But if you're right, just following that just for a moment, if you're right that there's no reasonable suspicion, or if we say that the lower court was right, your position is that that special condition limits anything that the probation department, the probation department can do. Right. Our position is that the court misdefined the special needs doctrine by saying that whenever, if you look at the report and recommendation on page 12, the court said that the court not only has a, that the probation officer not only has an obligation, but he has a duty to go in and search that residence based upon this information, not because of reasonable grounds, but because of the special needs doctrine, or whatever that is. And the special needs doctrine comes out of the Griffin versus Wisconsin case, which is based upon a statute which lays out the special needs. And so what we object to is that this amorphous special needs doctrine permits any probation officer to just violate the agreements that they sign with their supervisees, which says that we will not search your residence unless there is reasonable cause, or reasonable, excuse me, the language is reasonable suspicion. So based upon the lower court decision, this agreement can be totally abrogated anytime a probation officer says, well, I have special needs to search your house, because it's within my duties as a probation officer. I take it that that agreement is not a freely and voluntarily entered sort of thing, right? Isn't that agreement part of what a district court made a condition of probation, of supervised release, that this condition be agreed to? And that was recommended by the probation department. So if they had special needs, at least at the time of this sentencing, in your client's case, they were taking the position that the special need is that we be able to search on reasonable suspicion. And the district court then adopted that as the condition that it wrote into the conditions  So that's not a hostile question, by the way. I think that's supportive of your position, that at least at one time, the probation department apparently thought that it was sufficient for their special needs to have this kind of condition in people's supervised release terms. Well, if I can just respond to that. The district court adopted the report and recommendation completely. So the report and recommendation on page 12 says, The parties do not dispute that the probable cause requirement of the Fourth Amendment does not apply to the search of Alfero's residence. Although they agree that the lesser standard is applicable, they disagree about which standard applies. Alfero maintains that the applicable inquiry is reasonable suspicion, while the government contends that the applicable inquiry is the, quote, special needs doctrine. And so the court goes on to state, the government's position finds ample support in the record, and the court goes on to find that the search is constitutionally permissible as long as it is reasonably related to the performance of the parole officer's duties and does not need to be supported by reasonable suspicion. So she's saying it does not need to be supported by reasonable suspicion. The district court adopted that. Yeah, I get it. So it does not need to be supported by reasonable suspicion. So if the court were to affirm The problem is, of course, if there was a reasonable suspicion and this court were to find that there was reasonable suspicion, that's up to the court. But the court below did more than just that. I want to point that out. The court should say that it's not the special needs doctrine, and the court does not support a search that is not supported by reasonable suspicion. Well, we may not need to reach that issue. Okay, so with this little time that I have left, if I could just get to the in-limiting motion. The court permitted that there was paraphernalia found in the bathroom along with the rusty gun that was found. There was powder, which turned out to be not controlled substance, and some scales, other drug paraphernalia. There was also found a rifle scope in the kitchen, completely away from everything else. And that was in a cupboard above a stove, which was way higher than Mr. Alfaro could reach from his wheelchair. The court permitted all of that in, including the scope, the rifle scope in the kitchen, which we submit as prejudicial. If that was wrong, how is that not harmless error? I mean, how does any of that make it- It's prejudicial. I guess it is, but how does that affect the fact that he had the gun found in the apartment? What is the fact that this other stuff is there, too? If it's all not his, it's all not his. If it's all his, it's all his. Either way- Well, the issue is whether or not he knew the gun was there. It was hidden in an unbelievably secretive location. It's like, if you rent an apartment and somebody hid a gun in the wall, do you know it's there? I mean, that was our defense in the case. But the same is true of all this other stuff. Yeah. So why is all that other stuff- It was found inside a wall. Yeah, right. Yeah, so if you rent an apartment and a year later they go in and search and they find a gun, the issue is what knowledge. That was the whole issue for the trial. So bringing in the scope that was found in the kitchen is incredibly prejudicial. That didn't need to come in. It had no probative value at all. So it was incredibly prejudicial. So the scope in the kitchen is the thing you're most concerned about because everything else falls within your- If your defense is, our guy didn't even know that stuff was in the wall, then the fact that there was other stuff in the wall doesn't make his theory any more or less plausible. We objected to all of it because it was a 922G gun case. But the scope in the kitchen had- The government's argument is not- The government argues in their brief that- So I'm wondering whether the relevance of the scope in the kitchen is actually a legitimate relevance rather than a prejudicial relevance. The government's brief doesn't even address the scope in the kitchen. No, but you phrased it and so I'm interested in it because I hadn't focused on it either. But I wonder whether the fact that the scope is there might make it more likely that he knows there's a gun in the wall? Sure. I mean, yeah, he's involved in guns. If that's true- He's a guy who likes guns. He hides them in his walls. Yeah. So he's got a rifle scope in his kitchen. Yeah. Okay. Yeah. So you think it makes it more likely in an improper- Right. In an improper inference, not in a reasonable inference. Right. So in this trial, our whole defense was he didn't know this gun was in his wall. It was in the bathroom wall. It was screwed in behind a panel in the bathroom. And the government can respond, yeah, but he did have the scope in the kitchen also. But that was in a cupboard. That was in a cupboard. Yeah. But doesn't that show that he has some interest in guns? Pardon me, Judge? But doesn't that show that he has, as you just said, it helps to establish that he had some. It makes it more likely that he might have owned the gun behind the wall because he's interested in guns. He has a scope also in his kitchen. Or not because- We submitted- All of that is risk for the jury as to does this show what the government thinks it shows. I cited the Williams case. They said that the drug paraphernalia is of limited probative value and I would ask the court to look at the Williams case. Unless the court has any other questions, I'll defer. You reserve some for- Reserve some for the rest. Thank you. Good afternoon. I believe it's afternoon now. May it please the court. My name is Tiffany Lee and I represent the United States. To Judge Lynch's point, there was reasonable suspicion here. However, the district court and the magistrate judge found that question to be close. We do not necessarily believe the same. We feel that the record shows that- Do you have a section in your brief that says why don't you kind of hold this on the grounds of reasonable suspicion? I have a section in my brief that talks about reasonable suspicion in which case I noted that- I think it's on page 12 of your brief in the middle of a subsection entitled probation search of del Ferro can be upheld in the absence of reasonable suspicion. Yes. We also recognize that as well. But in the brief, in the discussion portion, we talked about the fact that this is not a case where there was nothing. In any event, we said that Curran believed that he did possess reasonable suspicion and we outlined the facts on page 13 as to those reasons why. With respect to the extent that the way the district court framed the issue in terms of even if there was no reasonable suspicion that under the special needs doctrine, this particular search could be upheld. The reasons for that is in part and parcel some of the evidence that led Officer Curran to the point where he approached his supervisors and said I believe that we need to execute a search on Alberto Alfaro. I have this information. This leads me to believe that he is not in compliance with the terms and conditions of the supervised release and that therefore I would like to pursue a search for these conditions of supervised release in terms of the fact that he was not to commit any future crimes. He also knew that he would be subject to a search but he was not to possess any firearms or contraband during his period of supervision. Is there any case precedential to us, special needs, characterized as special needs or otherwise, that has upheld a search in which there was neither reasonable suspicion nor a condition assigned to someone's status, whether it be probation or parole or whatever, a condition that authorized suspicionless searches? In conjunction with both? Is there any case that says where the facts are that neither of those is present but we or the Supreme Court has said nonetheless it's still okay to search without reasonable suspicion on the basis of special needs or any other theory? Not on neither. Right now before this court there are three cases in which a district court has ordered a special condition search, special condition, without using the terms reasonable suspicion. Judge Lynch sits on one of the panels. Those are cases in which there are appeals from a district court's sentence that incorporates such a condition as a condition of supervised release. Exactly. So I think what Judge Robinson's question is, as distinct from whether a district court has the authority to enter such a sentence, is there any case in which in the absence of such a condition that permits suspicionless searches, have we or the Supreme Court ever approved such a search? You have approved in Elder. In Elder, in that case, it was a federal probation search. The search condition, for some reason, did not contain the language reasonable suspicion. That case was based on four anonymous tips, I believe, that came in through to probation. Probation, again, went through the paces, looked for authority, and in that case you did talk about here we have a circumstance where we have special needs. What the probation officer was doing was reasonably related to the execution of his duties. And then also, in Elder, you had the language pertaining to the exclusionary rule. That was a summary order. Yeah, I was going to say that's a summary order. And remind me, in Elder, was there no search condition at all or was there a search condition that didn't specify a reasonable suspicion? So I handled Elder back in the day. I believe that there was a search condition that did not have the language of reasonable suspicion. So that wouldn't necessarily fit into this framework that I'm asking about. Are there cases where, I mean, if you say you can search but you don't limit it to unreasonable suspicion, right, then you're sort of in Samson land, right? Right? Or Briggs. Exactly. Briggs, yeah. Briggs, sorry. But I'm trying to figure out whether there's ever been a case that's presidential or not, frankly, where there's not even a condition that says you can come search, nor is there reasonable suspicion, but a court said that you can go search anyway. No, I have not seen it. There could be one, but based on I've been doing a lot of this litigation in this area, starting with Elder and then with Braggs and then with Olivares, Smith, and Tracy, so I have yet to see something that kind of fits all squares. But the reality is we do have this body of jurisprudence developing, you know, before Braggs, in this court we had Reyes, we had Talon, you know, in which case this court recognized that when it comes to individuals who are in supervised release, their rights are somewhat circumscribed. Now I do understand They're all distinguishable, and this is the case that if there is no reasonable suspicion, falls into a gap in the case law that we could, I suppose, fill. I continue to question, though, whether it is necessary for us to reach that issue here, because if this isn't a reasonable suspicion, I don't know what is. And the government agrees with, in terms of factually here, what we have is information that was before the probation officer, information that he went back to the ATF agent to ask in terms of timing of when these images may have come from the confidential informant. The testimony of Probation Officer Curran was this was Special Agent Van Alstyne's confidential informant, and, you know, Magistrate Judge Payson found his testimony to be credible. So we do have all this information. We have photos from inside the residence, in which case the search was effectuated. But to the extent this court does not accept special needs, you still have the application of the exclusionary rule. And this is one of those circumstances. Well, the application of the exclusionary rule, though, it's certainly a much easier question for the government if, as an elder, the officer is operating where a federal judge has told him that you can search the man's house without reasonable suspicion because that's one of the conditions of his supervision that you're in charge of. It's a little hard to say this is outrageous conduct for the officer to act on what the federal judge told him he could do, right? Well, but this, I think the problem in elder, this is where that gap fill of special needs is somewhat helping the argument in terms of application of the exclusionary rule. In essence, the district court is saying, you know, this is close. We have a probation officer that has information, you know, has done his or her due diligence and acted in good faith that this information was enough for reasonable suspicion in compliance with the terms of supervision that the probation office has agreed to with Mr. Alfaro. So in a separate circumstance where, you know, the probation officer just gets a phone call from Agent Van Alstyne and it was like, you know, who says, oh, I have some information, go to Mr. Alfaro's house, if under those circumstances, that's, like, completely different than what's going on here, right? Because we have a probation officer. He thinks he has reasonable suspicion and he is doing every step to ensure that, you know, he consulted with his probation chief. He's doing everything that he can to ensure that what he is doing is, as part of his responsibilities, what he ought to be doing while supervising Mr. Alfaro. Unless the court has any further questions, the government rests on its breath. Thank you. I'll make a very brief comment. I just need to emphasize also in the trial of this matter was very close. I believe the jury was out for two days. And the defense was knowledge that these items were hidden inside of a wall. And going back to what I was arguing before, in terms of the government's argument that the paraphernalia, which was found with the gun... Remember, this was a single-count indictment, 922 G1. The government had argued that it was important to bring in the drug evidence which was found at the same time, not drugs, but drug paraphernalia and cutting powder and scales and so forth. That was important to bring that in because they were found at or near the same location. They argued that that was important because it showed the other items that were stored in the panel compartment and it provided context, gave the jury the entire story as to how the drugs were discovered. But in this case, all they had to explain to the jury was that this defendant was on supervised release and they went to do a search. So it was pretty easy to explain the context. Didn't the government have a theory, and I'm not sure what the evidentiary foundation was, but didn't the government have a theory that to the extent that there was cutting powder there and it wasn't clumpy, that suggests that it hadn't been there a long time, which undermines his theory that this must have been here from a prior tenant. Was that... Yeah. I remember that argument. I think there was an argument made during closing statement. Yeah. Yeah, that was not even evidentiary. I mean, I don't... I think I responded to that by saying, clumpy, what does that mean? I mean, clumpy or not clumpy, what does that mean? There was no testimony concerning the clumpiness of the powder. So the purpose of the search could be very easily explained and they could have very easily just said, we did the search and we found a gun. And there's a case that I cite on page 23 where the court in Salerno, United States versus Salerno said, the drug paraphernalia is a limited probative value and it can be highly prejudicial. And then of course, I already cited United States versus Williams case where they excluded the drug paraphernalia. And again, I argue what I already argued about the scope in the kitchen. So with that, unless the court has further questions, I will conclude. Thank you very much. We'll take the matter under advisement. Thank you. Thank you.